SONAT EXPLORATION COMPANY,
Petitioner,

v.

CUDD PRESSURE CONTROL,
INC., Respondent.

No. 06–0979.

Supreme Court of Texas.

Argued Feb. 6, 2008.

Nov. 21, 2008.

R. Keith Jarrett, Thomas P. Diaz, Liskow & Lewis, New Orleans, LA, Sam Baxter, Rosemary T. Snider, Joel Thollander, McKool Smith, PC, Austin, TX, for Petitioner.

David M. Gunn, Beck, Redden & Secrest, L.L.P., Houston, James T. Foley, Foley & Colley, P.C., Tyler, TX, Michael H. Bagot, Thomas Rayer Jr., Wagner & Bagot, L.L.P., New Orleans, LA, H. Dwayne Newton, Nelson McCormick Hancock & Newton, Houston, TX, for Respondent.

Christopher Tramonte, Tramonte & Associates, Houston, TX, Arthur W. Landry, Arthur W. Landry and Jeanne Andry Landry, LLC, New Orleans, LA, for Intervenor.

Justice BRISTER delivered the opinion of the Court.

This case returns to us after we ordered that an insurer be allowed to argue on appeal a choice-of-law issue that its insured had waived.[1] The court of appeals sustained the insurer's point, finding that Louisiana law applied because it was the place the contract was performed and was impliedly chosen by the parties. While we disagree with those reasons, we agree with the court's ultimate conclusion that Louisiana law applies and that remand is required. Accordingly, we affirm.

## I. Background

Sonat Exploration Company and Cudd Pressure Control, Inc. signed a Master Service Agreement in May 1998 to govern oilfield services Cudd was to perform for Sonat. The agreement contemplated operations in at least four places, and specified the law for three of them. It required each company to indemnify the other for claims brought by their respective employees. It also required on jobs in Louisiana that Cudd name Sonat as an additional insured on its insurance policies.

In October 1998, an explosion at one of Sonat's Louisiana wells killed seven workers, including four Cudd employees. When the survivors of those four sued Cudd and Sonat in Texas, Sonat demanded indemnity but Cudd refused it. Sonat also demanded coverage as an additional insured from Cudd's insurer, Lumbermens Mutual Casualty Company, and again was refused. Sonat filed an indemnity claim against Cudd in the survivors' suit, and a separate lawsuit asserting claims against Lumbermens as an additional insured and alternatively against Cudd for failing to name Sonat as an additional insured.

Sonat and Cudd jointly settled with one of the four Cudd employees, but could not agree on settlement amounts for the other three. Eventually Sonat alone paid about $28 million to settle those claims, for which it seeks indemnity from Cudd.

The trial court found the parties' indemnity agreement enforceable under Texas law, and after a jury found a reasonable settlement would have been $20,719,166.74, the trial court entered judgment in that amount for Sonat and against Cudd. Cudd filed a notice of appeal, and Lumbermens as its insurer posted $29 million as security.

---

1. See In re Lumbermens Mut. Cas. Co., 184 S.W.3d 718 (Tex.2006).

## II. The Choice–of–Law Appeals

Before filing its appellate brief, Cudd signed a Rule 11 agreement with Sonat waiving its argument that Louisiana law applied, in return for which Sonat agreed to nonsuit its separate contract suit. When the court of appeals refused to allow Lumbermens to intervene to assert Louisiana law, we granted mandamus relief, noting that otherwise the Rule 11 agreement might allow Cudd to "foist[ ] liability for uninsured claims onto its insurer." [2]

On remand, the court of appeals agreed with Lumbermens' arguments and reversed the trial court's application of Texas law, and then remanded for unspecified further proceedings.[3] From that judgment, Sonat appeals claiming its indemnity was valid under Texas law; Lumbermens responds that it was invalid under Louisiana law; and Cudd conditionally appeals claiming it was invalid even under Texas law.

We need not decide which state's laws apply unless those laws conflict.[4] Under Texas law, oilfield indemnity clauses are valid if they are mutual and supported by liability insurance.[5] Under Louisiana law, such clauses are invalid if the party seeking indemnity was negligent or strictly liable.[6] The parties all agree, as do we, that these laws conflict.

Choosing the applicable law is obviously a question of law, but the contacts to be considered may raise a question of fact.[7] As the trial court made its decision here by summary judgment, we construe all fact questions against the movant (Sonat),[8] and then review the trial court's legal decision de novo.[9]

Under Texas choice-of-law rules governing contracts (including oilfield indemnity clauses), we look to the Restatement (Second) of Conflict of Laws—specifically section 187 for contracts that contain an express choice of law, and section 188 for those that do not.[10] Accordingly, we begin our analysis with those sections.

## III. Did the Parties Choose Louisiana Law?

The parties' Master Service Agreement contains a detailed choice-of-law provision, but none of it applies to this case. The provision states that the governing law will be: (1) maritime law for operations on navigable waters, and (2) Texas law for operations on land in Texas and New Mexico.[11] As the drilling site here was on land in Louisiana, neither circumstance applies.

2. *Id.* at 728.

3. 202 S.W.3d 901.

4. *Compaq Computer Corp. v. Lapray,* 135 S.W.3d 657, 672 (Tex.2004).

5. Tex. Civ. Prac. & Rem.Code § 127.005; *Ken Petroleum Corp. v. Questor Drilling Corp.,* 24 S.W.3d 344, 346 (Tex.2000).

6. *See* La.Rev.Stat. § 9:2780.

7. *Hughes Wood Prods., Inc. v. Wagner,* 18 S.W.3d 202, 204 (Tex.2000).

8. *Id.* at 205.

9. *See Texas Mun. Power Agency v. Pub. Util. Comm'n,* 253 S.W.3d 184, 192 (Tex.2008) (applying de novo review to summary judgment); *Texas Dept. of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex.2002) ("We review legal questions de novo.").

10. *Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex.1991); Restatement (Second) of Conflict Of Laws § 173 cmt. b (1971).

11. Paragraph 24.7 of the Master Service Agreement states:

This Agreement and the legal relations among the parties hereto shall be governed and construed in accordance with the general maritime law of the United States whenever any performance is contemplated in, on, or above navigable waters, whether

Lumbermens argues the parties impliedly chose Louisiana law by two other provisions in the agreement that refer to work done in Louisiana: (1) a paragraph designating Sonat as a "statutory employer" of Cudd's employees for Louisiana workers compensation coverage;[12] and (2) an attachment requiring Cudd to name Sonat as an additional insured for such work. The court of appeals held that because the latter provision is the "only effective way to obtain indemnity" in Louisiana, it should be treated as a choice by the parties to apply Louisiana law.[13] We disagree.

The Restatement recognizes that even if there is no explicit choice of law, use of legal terms or doctrines peculiar to one state "may provide persuasive evidence that the parties wished to have this law applied."[14] If this case concerned workers compensation, the specific reference to Louisiana's compensation law would undoubtedly require that law to apply.[15]

But the indemnity provisions at issue here make no reference to Louisiana law. To the contrary, they are printed in all capital letters, which appears to refer to Texas law (as it requires conspicuous notice[16]) rather than Louisiana law (as it voids indemnities whether conspicuous or not).

Nor can we surmise from references to Louisiana operations in two paragraphs that the parties intended Louisiana law to apply to all the rest. The Master Service Agreement is 21 pages long with 92 separately denominated paragraphs; had the parties intended to choose Louisiana law for all paragraphs rather than just one or two, it is odd they did not say so in some more general way.

Finally, if the additional-insured provision was an attempt to avoid the effect of Louisiana's indemnity law, that is no evidence the parties affirmatively chose to apply it. Provisions to *avoid* the effects of one state's laws may tell us something about the parties' expectations (a matter addressed below), but it can hardly be treated as an affirmative *election* of that law.

The objectives behind choice-of-law rules generally and the Restatement rules in particular "may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby."[17] But the parties must make that choice themselves. As the parties here failed to choose one law for all purposes in Louisiana, we must determine the applicable law on other grounds.

---

onshore or offshore. As respects particular Work involving non-maritime operations in the State of New Mexico, the State of Texas or offshore of the State of Texas, the internal laws of the State of Texas, without regard to principles of conflicts of law, shall apply in the even that maritime law is held inapplicable.

12. Louisiana law shields a "statutory employer" from tort liability. *See* LA.REV.STAT. § 23:1061.

13. 202 S.W.3d 901, 909–10.

14. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. a (1971).

15. *See Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex.2000).

16. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993) (stating that fair notice requirements applicable to indemnities include a conspicuousness requirement "that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it") (quoting *Ling & Co. v. Trinity Sav. & Loan Ass'n*, 482 S.W.2d 841, 843 (Tex.1972)).

17. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. e (1971).

## IV. What Law Applies in Multistate Contracts?

Restatement section 188 provides that "an issue in contract [is] determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties."[18] In making that decision, we take into account the contacts listed in section 188 and the principles listed in section 6.[19]

### A. The Section 188 Contacts

Section 188 lists five contacts to be taken account: (a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter, and (e) the domicile, place of incorporation, and place of business of the parties.[20] As will often be the case with multistate contracts, in this case those contacts point in few (or perhaps too many) directions.

The place of contracting is technically Texas, as the last signature was added there.[21] But neither the place of contracting nor the place of negotiation is significant when (as occurred here) the parties conduct both from offices in different states.[22] Nor is the location of the subject matter significant when the parties contemplate services in several different states.[23] Nor is the place of incorporation significant, as nothing suggests these two Delaware corporations ever contemplated oilfield work there.[24]

Cudd's place of business is arguably significant because oilfield indemnity statutes are intended to protect contractors from unfair bargaining.[25] But that place is itself unclear. The Master Service Agreement lists an Oklahoma address for Cudd. Cudd

---

18. *Id.* § 188(1).

19. *Id.* § 188(1)-(2); *see Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex. 1991).

20. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1971).

21. *Id.* § 188 cmt. e ("[T]he place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect....").

22. *Id.* ("Standing alone, the place of contracting is a relatively insignificant contact."); *id.* ("The place where the parties negotiate ... is of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone.").

23. *Id.* ("When the contract deals with a specific physical thing, such as land or a chattel, or affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of employment, the location of the thing or of the risk is significant.") (citation omitted).

24. *Id.* ("At least with respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter state.").

25. *Id.* § 188 cmt. c ("So the state where a party to the contract is domiciled has an obvious interest in the application of its contract rule designed to protect that party against the unfair use of superior bargaining power."); *see also Roberts v. Energy Dev. Corp.,* 235 F.3d 935, 943 (5th Cir.2000) (disregarding parties' choice of Texas law and applying Louisiana law to void indemnity as that was place of business of oilfield contractor); *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.,* 94 S.W.3d 163, 177–78 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *cf. Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 57 (Tex.1991) ("One can argue that the Texas Legislature's purpose in enacting chapter 127 is to protect Texas contractors who work on mineral wells and mines wherever they may be situated, but we think it more plausible that it had the more limited objective of protecting contractors who drill wells in Texas.") (emphasis omitted).

filed a February 2000 affidavit by its president swearing that its principal place of business was in Louisiana. Sonat found and filed a June 1999 affidavit from the same officer in a different lawsuit swearing that "nearly all of the higher level management decisions" are made in Georgia, that "the company generally advertises within the industry that its main office is located in Houston," and that "[m]ost of the department heads are located either in Houston (engineering) or Houma, Louisiana (accounting, payroll and risk management)." Suffice it to say that Cudd's place of business appears to be flexible.

This leaves only the place of performance. The court of appeals found this contact dispositive,[26] relying on our opinion in *Maxus Exploration Co. v. Moran Bros., Inc.*[27] In *Maxus*, we held that section 196 of the Restatement makes the place of performance of "paramount importance" with respect to service contracts.[28] We reserved in *Maxus* the question whether the place of performance is where the drilling or the suing takes place.[29]

But section 196 applies only to service contracts involving a single state; it does not apply to contracts like this one contemplating services in many states:

> The rule [of section 196] applies if the major portion of the services called for by the contract *is to be rendered in a single state and it is possible to identify this state at the time the contract is made*. It is necessary that the contract should state where the major portion of the services is to be rendered or that this place can be inferred either from the contract's terms or from the nature of the services involved or from other circumstances. For this reason, *the rule of this Section is unlikely to aid in the determination of the law ... when the work called for by the contract can be done in any one of two or more states.*[30]

As no single state would have "loomed large" in the parties' minds when signing this agreement,[31] the contacts analysis suggests only that the law of several states might apply.

### B. The Section 6 Principles

The Restatement lists seven non-exclusive factors to be considered in determining the applicable law.[32] But it deems

---

26. 202 S.W.3d 901, 906, 909.

27. 817 S.W.2d 50, 53 (Tex.1991).

28. *Id.; see* RESTATEMENT(SECOND) OF CONFLICT OF LAWS § 196 cmt. c (1971).

29. 817 S.W.2d at 54; *see Chesapeake*, 94 S.W.3d at 171–72 ("Nabors' claim in both cases is for liability and legal services incurred in Texas, not for drilling services performed in Louisiana. Considering only the particular issue in dispute, the place of performance of that obligation was in Texas."); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) (1971) ("The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, *with respect to that issue*, has the most significant relationship to the transaction and the parties ....") (emphasis added).

30. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 196 cmt. a (1971) (emphasis added).

31. *Id.* § 196 cmt. c ("Several factors serve to explain the importance attributed by the rule to the place where the contract requires that the services, or a major portion of the services, be rendered. The rendition of the services is the principal objective of the contract, and the place where the services, or a major portion of the services, are to be rendered will naturally loom large in the minds of the parties.").

32. *Id.* § 6(2) ("[T]he factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expecta-

one of them most significant in contract cases: "Protection of the justified expectations of the parties is the basic policy underlying the field of contracts."[33] Enforcing contracts according to their own terms satisfies the relevant policies of the forum,[34] enhances certainty, predictability, and uniformity of result, and facilitates commerce and relations with other states and nations.[35] Accordingly, the parties' expectations as stated in their contract should not be frustrated by applying a state law that would invalidate the contract, at least not unless those expectations are substantially outweighed by the interests of the state with the invalidating rule.[36]

As already noted, for work in Louisiana the parties expressly provided that Sonat would be covered (at its own expense) as an additional insured under Cudd's insurance policies. Why insert this special provision applicable only to Louisiana jobs? Additional-insured agreements are common and enforceable in other places too.[37] The only explanation is that the parties expected their cross-indemnities might not be enforceable there.

Sonat argues that the additional-insured provision was inserted simply to make sure indemnity occurred—that it was merely a belt-and-suspenders provision. But both belt and suspenders are unnecessary unless a person expects trouble with one of them. While we agree the parties expected Sonat to be indemnified one way or the other, including this provision solely for Louisiana jobs suggests they also expected trouble enforcing their indemnities in such cases.

Sonat points out that the Restatement urges courts to avoid applying a law that would invalidate the parties' contract, *even if the parties had specifically picked it*,[38] and argues that Louisiana law would invalidate the cross-indemnities here. But that is not entirely true; Louisiana law would invalidate Sonat's indemnity only if Sonat was negligent or strictly liable,[39] an issue that has never been decided. Similarly, Texas law would partially invalidate these unlimited indemnities by limiting them to the agreed amount of insurance coverage.[40]

---

tions, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.").

**33.** *Id.* § 188 cmt. b; *see id.* § 6(2)(d)-(e).

**34.** *Id.* § 188 cmt. b; *see id.* § 6(2)(e); *see also Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex.2008) (noting state's "paramount" public policy that "contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by [c]ourts of justice").

**35.** *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(a), (f) (1971); *Chesapeake*, 94 S.W.3d at 177.

**36.** Restatement (Second) of Conflict of Laws § 188 cmt. b (1971); *see DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex.1990).

**37.** *See, e.g., Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 670 (Tex.2008).

**38.** *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. e (1971) ("On occasion, the parties may choose a law that would declare the contract invalid. In such situations, the chosen law will not be applied by reason of the parties' choice. To do so would defeat the expectations of the parties which it is the purpose of the present rule to protect.... If the parties have chosen a law that would invalidate the contract, it can be assumed that they did so by mistake."); *id.* § 188 cmt b ("Parties entering a contract will expect at the very least, subject perhaps to rare exceptions, that the provisions of the contract will be binding upon them.").

**39.** *See* LA.REV.STAT. § 9:2780.

**40.** TEX. CIV. PRAC. & REM.CODE § 127.005(b).

Thus, we can avoid all invalidating rules only by avoiding both Texas and Louisiana law. No party suggests we go that far.

■■ We do not hold today that Louisiana law should cover all indemnity disputes stemming from oilfield accidents there. When a contract involves oilfield work in many states, sophisticated parties should generally be free to designate the law that will govern their relationship and have that choice respected.[11] But the parties here chose no law for Louisiana jobs, and included an additional-insured provision that would have been superfluous had they expected their indemnities to be enforceable in such cases. Because contracts should be governed by the law the parties had in mind when the contract was made,[42] we hold in these circumstances that Louisiana law applies.

## V. Did Cudd Waive Application of Louisiana Law?

■ Sonat argues that even if Louisiana law applies, Cudd should not benefit from such a holding because, in accordance with their Rule 11 agreement, Cudd never asserted that issue on appeal. In the unique circumstances here, we disagree.

■ It is of course true that an appellate court cannot reverse on a ground an appellant has never raised.[43] But while Cudd did not raise the choice-of-law issue, Lumbermens did so on its behalf. Lumbermens does not appear here on its own behalf, as it has neither sued nor been sued by anyone; instead, it stands in the shoes of its insured. As we noted in the earlier original proceeding, under the doctrine of virtual representation Lumbermens is not technically intervening as a separate party, but "is already deemed to be a party."[44] While insurer and insured are asserting different legal theories regarding choice of law, both still share the identity of interest created by their insurance contract.[45]

■ Moreover, we believe the result would be the same even if we treated Cudd and Lumbermens as separate parties on appeal. Generally, reversal in favor of a party that appealed does not require reversal in favor of another who did not.[46] But an exception applies when the rights of appealing and nonappealing parties "are so interwoven or dependent on each other as to require a reversal of

41. *DeSantis*, 793 S.W.2d at 677; *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 180 (Tex.App.-Houston [14th Dist.] 2002, no pet.) ("Because these sophisticated parties drafted a contract to meet Texas law, and deemed it to apply, we believe they should have what they bargained for."); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971).

42. *DeSantis*, 793 S.W.2d at 677 ("[I]n every forum, a contract is governed by the law with a view to which it was made.") (quoting *Wayman v. Southard*, 10 Wheat. 1, 23 U.S. 1, 48, 6 L.Ed. 253 (1825)); *see* RESTATEMENT(SECOND) OF CONFLICT OF LAWS § 188 cmt. b (1971).

43. TEX R.APP. P. 53.2(f) ("If the matter complained of originated in the trial court, it should have been preserved for appellate re-

view in the trial court and assigned as error in the court of appeals."); *see, e.g., Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998); *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993).

44. *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 (Tex.2006).

45. *Id.* at 724 ("That different legal theories may be asserted to defend those funds does not defeat the identity of interest between Lumbermens and Cudd that the insuring contract creates and the virtual-representation doctrine protects.").

46. *Pat Baker Co.*, 971 S.W.2d at 450; *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex.1973).

the entire judgment." [17] For example, when only one government agency successfully appealed an expunction decision, we held the reversal must also apply to other agencies that failed to appeal, because leaving a criminal record at some agencies but not others would provide neither party "full and effective relief." [48]

The same is true here: if Cudd is still bound to the trial court judgment, so is Lumbermens as its liability insurer. [49] Sonat has not asserted a direct action in this case against Lumbermens; [50] but it can recover against Lumbermens if it can recover against Cudd. [51] The $29 million Lumbermens pledged to secure the trial court judgment during this appeal is payable to Sonat unless Lumbermens' successful appeal applies not just to itself but also to its insured. [52] The exception extending reversals to nonappealing parties has most often been applied when indemnity claims or other dependent claims are involved, [53] which is precisely the case here.

We understand Sonat's complaint that it is unfair to let Cudd escape the burden of its Rule 11 agreement while Sonat cannot. But as recognized before, Sonat and Cudd intended this agreement to shift all potential liability to Cudd's insurer. [54] In some circumstances, such agreements are against public policy and unenforceable. [55] While we have no occasion to question that agreement here, we think Sonat's complaint of unfairness is outweighed by the requirements that an insurer must act in good faith on behalf of its insured.

## VI. Should We Remand or Render?

■ Finally, Cudd complains that the court of appeals should have rendered judgment against Sonat's indemnity claim

47. *Ex parte Elliot*, 815 S.W.2d 251, 251 (Tex. 1991); *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex.1982).

48. *Ex parte Elliot*, 815 S.W.2d at 252.

49. *In re Lumbermens*, 184 S.W.3d at 723 ("Lumbermens contends the court of appeals abused its discretion in rejecting Lumbermens' intervention because, as Cudd's insurer and the party that posted the appellate security, Lumbermens is bound by the judgment in the case.").

50. *See* Tex.R. Civ. P. 38(c) (prohibiting direct actions in tort against insurer); Tex R. Civ P. 51(b) (same).

51. *Angus Chem. Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138, 139 (Tex.1997).

52. *In re Lumbermens*, 184 S.W.3d at 725 ("Lumbermens has pledged $29 million to secure the judgment in Sonat's favor. Even if Lumbermens could eventually recoup the amount it has pledged through a potential coverage suit against Cudd, its obligation to pay the underlying judgment to Sonat is immediate and binding in the event Cudd's appeal is unsuccessful.").

53. *See Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex.1998); *see, e.g., Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 447 (Tex.1989) (holding indemnity claim between defendants had to be retried as it depended on outcome of negligence case against indemnitor); *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex. 1982) (same); *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 844 (Tex.2000) (holding defendant/indemnitor who would have to pay second defendant/indemnitee's judgment was entitled to appeal that judgment).

54. *In re Lumbermens*, 184 S.W.3d at 728 ("[I]f Lumbermens is not permitted to intervene and the choice-of-law issue is meritorious, Cudd will have essentially foisted liability for uninsured claims onto its insurer.").

55. *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 713 (Tex.1996) (invalidating assignment of bad faith claims on public policy grounds when insured abandoned its natural position in order to take advantage of insurer); *see also GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 311 (Tex.2006) (declining to adopt true-facts exception to eight-corners rule as record showed no evidence of collusive pleading).

rather than remanding for further proceedings. But as already noted, neither the trial court nor the jury found Sonat negligent or strictly liable, and without such a finding the plain terms of Louisiana's law do not appear to apply:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is *caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee,* or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.[56]

We recognize that in 1988 the Fifth Circuit made an *Erie*-guess that a settlement (like Sonat's) precluded indemnity claims under Louisiana's oilfield indemnity law.[57] Since then, at least two Louisiana intermediate appellate courts have held otherwise.[58] The Fifth Circuit has stuck to its position under an internal rule that it must follow its own precedent until the state's highest court has ruled on the matter.[59] As we are not bound by that rule, we apply what appears to be the plain meaning of the statute and the rulings of Louisiana's own courts.

In the course of arguing that Texas law should apply, Sonat has argued that Louisiana law would void its indemnity. But it has never conceded negligence; to the contrary, its settlement documents specifically denied any liability. As we have rejected Sonat's conclusion that Louisiana law would inevitably void its indemnity, we decline to use that argument against it and hold that it waived any dispute regarding negligence.

Accordingly, although we disagree with the court of appeals' reasoning, we affirm its judgment reversing the application of Texas law and remanding to the trial court for further proceedings applying Louisiana law.

---

**56.** La.Rev.Stat. § 9:2780(B) (emphasis added).

**57.** *Tanksley v. Gulf Oil Corp.,* 848 F.2d 515, 518 (5th Cir.1988).

**58.** *Ridings v. Danos & Curole Marine Contractors, Inc.,* 723 So.2d 979, 983 (La.App. 4 Cir.1998); *Phillips Petroleum Co. v. Liberty Servs., Inc.,* 657 So.2d 405, 409 (La.App. 3 Cir.1995).

**59.** *Roberts v. Energy Dev. Corp.,* 235 F.3d 935, 944 (5th Cir.2000).