**Affirmed and Opinion filed October 2, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00900-CV

**CITIGROUP GLOBAL MARKETS REALTY CORP., Appellant**

**V.**

**STEWART TITLE GUARANTY COMPANY, Appellee**

## NO. 14-11-00901-CV

**K.R. PLAYA VI, S. DE R.L. DE C.V., Appellant**

**V.**

**STEWART TITLE GUARATY COMPANY AND STEWART TITLE GUARANTY DE MEXICO, S.A. DE C.V., Appellees**

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-03256**

# OPINION

In this consolidated appeal regarding a dispute over payment on title insurance claims to numerous properties in Mexico, appellants Citigroup Global Markets Realty Group and K.R. Playa VI, S. de R.L. de C.V. (K.R. Playa) challenge the trial court's take-nothing judgment in favor of appellees Stewart Title Guaranty Company (Stewart U.S.) and Stewart Title Guaranty de Mexico, S.A. de C.V. (Stewart Mexico).[1]  In four issues, Citigroup asserts (a) that the trial court erred in admitting the expert testimony of Bruce Greenberg regarding property valuation, (b) that there is legally insufficient evidence to support the jury's finding that an exclusion to the title insurance policies issued to K.R. Playa and Citigroup by Stewart Mexico and Stewart U.S. precludes coverage for ten of the sixteen subject properties, (c) that the jury's damages award of zero for the six properties to which the exclusion is not applicable is not supported by the evidence, and (d) that the trial court erred by "barr[ing] Citigroup from bringing claims under Texas law for the insurer's violation of the Texas Insurance Code and its duty of good faith and fair dealing."  K.R. Playa contends that (1) Stewart Mexico did not prove that it was actually prejudiced by K.R. Playa's failure to comply with certain conditions in its title insurance policy, which does not absolve Stewart Mexico of liability under the policy; (2) Stewart Mexico had both constructive and actual knowledge of the title defect at issue in this case; thus K.R. Playa had no duty to provide Stewart Mexico with notice of this defect; and (3) both Stewart Mexico's and Stewart U.S.'s repeated violations of a pre-trial motion in limine order

---

[1] Both Citigroup and K.R. Playa incorporated each others' briefs by reference.  *See* Tex. R. App. P. 9.7 (permitting any party to join in or adopt by reference all or any part of, as is relevant here, a brief filed in an appellate court by another party in the same case).  However, in doing so, they have risked preserving error if they failed to identify the rulings in the record preserving error on their own issues.  *See* Tex. R. App. P. 33.1(a) (explaining that the record must show that the *complaining party* preserved a complaint for appellate review).

"deceived" the jury into believing that K.R. Playa "owned" the properties at issue in this case, "a misconception that poisoned the entire verdict." After considering those issues necessary to final disposition of this appeal, we affirm.

## INTRODUCTION

K.R. Playa purchased sixteen properties in Mexico and obtained title insurance from Stewart Mexico. K.R. Playa later obtained financing from Citigroup for its purchases of these properties. Citigroup purchased lender's title insurance policies for each property from Stewart Mexico, but also insisted that Stewart U.S. contractually agree to "assume the entire liability of [Stewart Mexico] under" each policy and agree to "pay any valid claim" under the policies to the same extent as if the entire liability had been insured by Stewart U.S. policies. These agreements provided Citigroup the right to enforce the policies against Stewart U.S. in Texas courts.

The record reflects that, at the time of trial, the following claims remained unresolved: (1) Citigroup's claims against Stewart U.S. for breach the lender's title policies, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code;[2] and (2) K.R. Playa's claims against Stewart Mexico for breach of the owner's title policies.

---

[2] Regarding the latter of these two, the trial court denied Citigroup's "motion for application of Texas law" to its claims against Stewart U.S.

3

*The Decree*

On April 23, 1981, the president of Mexico issued an Expropriation Decree (the Decree), pursuant to which the Mexican federal government took over six million square meters of land to create the Tulum National Park (the Park). According to the Mexican National Commission of Protected Natural Areas (CONANP), the Park is federal property owned by the Mexican federal government. But the Decree does not provide any guidance, on its face, showing its application to any particular properties located in the Park. And notwithstanding the Decree, at the time of this dispute, some private individuals operated hotels and restaurants on land subject to the decree. Further, the Mexican federal government had taken no steps to enforce the decree or evict the commercial ventures.

*The K.R. Playa Purchases*

In late 2005, Kor Realty Group, a Los Angeles-based real estate developer specializing in building luxury hotels, sought to develop a stretch of beachfront property in Tulum. This property was attractive to Kor because there were no high-end luxury hotels in the area with direct beach access. Additionally, the Mexican state of Quintana Roo, in which Tulum was located, was in the process of improving its airport and infrastructure. Finally, Kor anticipated that Tulum would be granted independence as a city in 2007, which would permit the local government to increase density in the area as an "urban zone" and manage the zoning and development of this stretch of property.

---

[3] Because of the voluminous record in this case, we provide a brief background section here for context and provide more specific facts relevant to our disposition as we discuss the issues in this appeal.

From early to mid 2006, Kor, through its Mexican subsidiary, appellant K.R. Playa,[4] purchased sixteen properties in the Tulum area (the "Tulum Properties") for a total of nearly $55 million. The first eleven purchases of the Tulum Properties were handled by K.R. Playa managers Jim Reilly and David Lopez.[5] Before the closing of the purchase of each property, K.R. Playa obtained title insurance commitments from Stewart Mexico.[6] Stewart Mexico hired an agent to search public title records in connection with its issuance of policies for K.R. Playa's purchase of the first two Tulum Properties. This agent discovered a reference to the Decree in its title search, but stated in its report, "By a Map indicating the area condemned by the Decree of April 23, 1981, to declare it the Tulum National Park, [the owner] shows that the tracts owned by him *were not* affected by such condemnation" (emphasis added). Stewart Mexico did not specifically list the Decree as an exception from coverage in any of its title policies.

In June 2006, K.R. Playa obtained state government issued land-use certificates showing the type of permitted use and the density (number of hotel rooms permitted in a given area) for each of the Tulum Properties pursuant to federal zoning law, the Programa de Ordenamiento Ecologico Teritorial (POET). According to these POET certificates, the zoning designation of the properties was

---

[4] K.R. Playa notes in its brief that "Kor" and "K.R. Playa" were used "interchangeably" at trial. Accordingly, whenever we refer to "K.R. Playa," we are likewise referring to "Kor" in this opinion. Moreover, the reporter's record does not contain testimony from any individuals who are employed or associated with K.R. Playa.

[5] Reilly was K.R. Playa's general manager and Lopez was its administrative manager. Both were appointed by K.R. Playa on September 30, 2005. Both were removed from their positions on August 21, 2006. Neither Reilly nor Lopez testified at trial.

[6] Although K.R. Playa's purchases of the Tulum Properties were initially financed by a private equity group, it later obtained a loan, secured by the properties, from Citigroup for approximately $41 million. As noted above, Citigroup obtained its own lender's title insurance on each of the Tulum Properties through Stewart Mexico, with further contractual assurances provided by Stewart U.S.

as follows: (1) Ecological Policy: Conservation; (2) Prevailing Use: Wildlife; (3) Conditional Use: Infrastructure and Tourism. The density permitted for each property was up to thirty hotel rooms per hectare.

Two months later, Kor hired a local environmental engineering firm, Kaiser-GAIA, to assist with development plans. Kaiser-GAIA informed Kor that, contrary to the POET land-use certificates, only parts of the Tulum Properties were zoned for development—those properties in the southern part of the area. According to Kaiser-GAIA, the northern portions of the Tulum Properties were all zoned "AN5," meaning "zero density" was permitted in this area. However, Kaiser-GAIA informed Kor that Tulum officials had proposed an Urban Development Plan (PDU) with zoning laws for Tulum that differed from the federal zoning laws under POET.

Kor was interested in a greater density than permitted under either POET or Tulum's proposed PDU. To that end, Kor hired the Mexico City law firm of Creel, Garcia-Cuellar y Muggenburg (Creel) and retained as a lobbyist Jorge Montano, the former Mexican ambassador to the United States and the United Nation. With the assistance of Montano, Creel, and Kaiser-GAIA, Kor and K.R. Playa personnel met with numerous Mexican government officials at federal and municipal levels seeking support for its development plans. But on February 1, 2007, Creel provided a memorandum to Stacy Shaw, Kor's general counsel, and the rest of Kor's legal team involved in the Tulum development, informing them that Kor/K.R. Playa could anticipate developing only a total of up to ninety-eight rooms in the southern area of the Tulum Properties and no rooms in the northern

portion.[7]  Only camping and ecotourism would be permitted in the northern portion of the property under the federal zoning laws applicable to the area.

Nonetheless, in early February 2007, Kor personnel, including Brad Korzen, CEO of Kor, met with federal and local officials and presented detailed plans for proposed development of the Tulum Properties.  Korzen left these meetings "pretty optimistic that our plans would be positively received.  Certainly no one said 'You're approved,' because it was a long process to go through with an environmental impact report and other applications still to be done."  But Montano reported in an email to Korzen, Shaw, Jeff Smith—Kor Chief Operating Officer, Jean Loup Ziegler—a member of the Kor legal team, and several others on February 20, 2007 that:

- President Calderon instructed his Cabinet that no development is permitted in the Tulum National Park;

- The Mayor of Tulum "made a 180 degree change after a call from Pres. Calderon to the Governor. His statement doesn't leave any doubts. Zero density in the National Park. That is the opposite to what he said months ago to Stacy [Shaw, Kor's general counsel] and 10 days ago to Brad [Korzen]."

- According to the Mexican National Institute of Anthropology & History (INAH), "it is clear that those who sold land after the 1981 expropriation made the operation against the law."

In response to this email, Kor hired another Mexico City law firm to investigate the Decree.  This firm, Gonzalez Calvillo, researched the Decree and opined that, if the Tulum Properties fell within the expropriated area, the Mexican

---

[7] According to this memo, POET regulations defined "room" as

the lodging space destined to the rent [sic] per night operation, of which space allows to offer guest sanitary services, sleeping area for two, luggage storing room, and a lounge; it shall not include sites for the preparation or storage of foods or drinks; the total number of rooms for a tourism project includes the necessary rooms for service personnel without these increasing the total room number count.

7

federal government had title to them. At the suggestion of Gonzalez Calvillo, Kor hired a surveyor to plot the metes and bounds of each property. The surveys, which Gonzalez Calvillo received on April 18, 2007, showed that the properties were within the expropriated area; thus, the firm concluded that the federal government had title to the Tulum Properties. Shortly thereafter, Gonzalez Calvillo filed title insurance claims on behalf of K.R. Playa with Stewart Mexico. On April 26, Kor informed Citigroup that it had "recently been made aware of the possibility that all or a substantial part of the real property located in Tulum, Quintana Roo, Mexico and serving as collateral for [Citigroup's loan] may be subject to a title encumbrance that was not previously disclosed" to Kor/K.R. Playa by Stewart Mexico. Citigroup filed its own title insurance claims thereafter. All title insurance claims were denied by both Stewart Mexico and Stewart U.S.

*The Litigation*

Citigroup filed suit against Stewart U.S. in January 2008; K.R. Playa was later brought in as a third-party defendant and in turn, filed its own claims against Stewart Mexico and Stewart U.S. (collectively, the "Stewart Companies"). Prior to trial, as noted above, the trial court denied Citigroup's pre-trial motion for application of Texas law to its claims against Stewart U.S. Additionally, the trial court conducted extensive pre-trial hearings on Mexican law, ultimately deciding that the Decree was "valid and enforceable" and, through it, "the Mexican government took or acquired the 16 Tulum lots" at issue in this case. However, the trial court explicitly declined to determine who "owned" the properties or to instruct the jury that K.R. Playa did not "own" the properties.

A jury trial began in mid-February 2011 and continued until April 28, 2011, when the jury returned its verdict. As is relevant to our disposition of this appeal,

the jury answered "Yes" to the following question for ten out of the sixteen Tulum Properties:

> Did K.R. Playa know of a defect, lien, encumbrance, adverse claim or other situation of fact or law and intentionally assume or agree to that defect, lien, encumbrance, adverse claim or other situation of fact or law as of the date of purchase of the 16 Tulum lots?
>
> You are instructed that "a defect, lien, encumbrance, adverse claim, or other situation of fact or law" means the 1981 Expropriation Decree as defined in the Definitions section of the Charge of the Court.
>
> Answer "Yes" or "Nor" for each Property[.]

The Stewart Companies bore the burden of proof on this question. Regarding the six properties that the jury found K.R. Playa did *not* know of the Decree and "assume or agree" to its effect at the time of purchase, the jury was asked the following question, on which Citigroup bore the burden of proof:

> What sum of money if paid now in cash would fairly and reasonably compensate Citigroup for its damages under the Lender policies?
>
> In considering damages, consider the actual monetary loss or damage sustained or incurred by Citigroup, and select *the lease of*:
>
> (i) the Amount of Insurance stated in Schedule "A" of the Lender Polcies;
>
> (ii) the difference between *the value of the insured estate or right as insured* and *the value of the insured estate or right subject to the lien or encumbrance or other situation of fact or law insured against by the Lender Policies at the date Citigroup ascertained the facts giving rise to the loss or damage*.

(emphasis added). As to each of the six properties, the jury found zero dollars in damages. The jury was asked a nearly identical question regarding the amount of money that would "fairly and reasonably compensate K.R. Playa for its damages

9

under the Owner Policies," and found zero dollars in damages for all of the properties.[8]

On June 30, 2011, the trial court entered a final take-nothing judgment in favor of the Stewart Companies. After Citigroup's and K.R. Playa's post-verdict motions were denied, this appeal timely followed.[9]

## SUFFICIENCY

We address Citigroup's and K.R. Playa's challenges to the sufficiency of the evidence issues first. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the finding, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). When the appellant attacks the legal sufficiency of a finding on which it did not have the burden of proof, it must demonstrate that there is no evidence to support the finding. *Id.* at 810. We may not sustain a legal sufficiency, or "no evidence" point unless the record demonstrates that: (1) there is a complete absence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id.*

---

[8] The question relating to K.R. Playa's damages was not limited to only those properties that Citigroup's damages question was; it covered all sixteen of the Tulum Properties.

[9] Specifically, K.R. Playa's notice of appeal states that it is appealing from: the trial court's September 12, 2011 order denying its motion for judgment notwithstanding the verdict (JNOV) or alternatively for new trial; the final judgment; and the trial court's January 30, 2011 order applying Texas law to and dismissing its claims against Stewart U.S. Citigroup noticed its appeal from the June 30, 2011 final judgment, the February 8, 2011 order on motion for application of Texas law and motion for summary judgment, and the September 12, 2011 order denying its motion for JNOV and motion for new trial.

10

To evaluate the factual sufficiency of the evidence, we consider all the evidence and will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

## A. K.R. Playa's Knowledge of the Decree

In Citigroup's second issue, it asserts that there is legally and factually insufficient evidence to support the jury's verdict that "K.R. Playa 'assumed' or 'agreed' to a total failure of title." This issue is a challenge to the jury's findings that K.R. Playa assumed or agreed to the Decree's effect as to ten of the sixteen Tulum Properties at the time it purchased these properties. Further, although Citigroup states that this issue encompasses a factual sufficiency challenge, in the argument of this issue, Citigroup focuses solely on legal sufficiency. Thus, we only address the legal sufficiency of the jury's finding.

As noted above, the jury found that, as of the purchase date of ten of the sixteen Tulum Properties, K.R. Playa knew about the Decree and assumed or agreed to its effect. Again, where, as here, a party attacks the legal sufficiency of the evidence to support an adverse jury finding on an issue for which it did not have the burden of proof at trial, it must show that no evidence supports the jury's adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011).

The following evidence supports the jury's finding that K.R. Playa "knew" about the Decree and "assumed or agreed" to its effect when it purchased these properties. Raul Negrete was a real estate appraiser in Mexico hired by K.R. Playa in early 2006 to evaluate two properties in the Park it was interested in purchasing. Negrete testified that he spoke with Lopez and Reilly before he provided the

appraisals to K.R. Playa. He stated that he told Lopez that "the zone that they were thinking about investing in was in a special position because a decree had been issued in that zone."[10] According to Negrete, Reilly and Lopez informed him that "they were going to deal with the SEMARNAT authorities on this matter and that they were going to try to find a way to resolve the matter." The record reflects that SEMARNAT refers to the Environmental and Natural Resources Ministry of Mexico.

Further, Raymond J. Thoman, III, the sales broker for one of the Tulum Properties, Playa Pamela, acknowledged in his testimony that, in Tulum, the terms "Tulum National Park" and "Decree" were virtually synonymous. He stated that he had participated in two sales of land in the Park, including the sale of Playa Pamela to K.R. Playa. According to Thoman, he dealt with Reilly and Lopez in this land sale. Reilly and Lopez told him that they were "well aware" that the property was in the Park. Thoman explained that they "didn't seem too concerned about . . . anything as long as they bought the land." Thoman testified that they discussed the zero density issue within the Park and that Reilly and Lopez were aware of the risk that K.R. Playa might not be able to build anything on the land because of zoning and archeological restrictions. In fact, Thoman explained that Reilly and Lopez seemed to know about the Solidaridad/Tulum PDU. Importantly, this PDU was admitted into evidence and contains the text of the Decree,[11] as well

---

[10] Negrete also informed Lopez that people in the region believed the decree "was invalid and did not apply to the zone."

[11] The language of the Decree makes clear that the Mexican federal government is taking the described property to protect and preserve it as a national park "allowing the entrance to visitors but, but in a controlled manner." It declares it a National Park named "Tulum." Finally, the Decree states that the federal government "shall take possession of the expropriated surface area."

as the metes and bounds description of the National Park. Kor CEO Brad Korzen testified that Reilly reviewed this PDU.

From this evidence, jury could reasonably have concluded that Reilly and Lopez (a) knew the lots were within the Tulum National Park, (b) knew the Park was created by the Decree that expropriated the area within its boundaries, and (c) intentionally "assumed and agreed" to the Decree when they purchased the ten Tulum Properties at issue.

Applying the appropriate standard of review, we conclude that Citigroup has not established that there is no evidence to support the jury's finding. *See id.* Stated differently, there is legally sufficient evidence to support the jury's finding that, at the time K.R. Playa purchased the ten properties at issue, it knew and assumed or agreed to the effects of the Decree.[12] Accordingly, we overrule Citigroup's second issue.

---

[12] In K.R. Playa's briefing, it challenges the jury's answers to questions three and four. In these questions, the jury answered "yes" to the following questions:

> Did K.R. Playa fail to notify Stewart Mexico promptly in writing within thirty (30) business days from the date K.R. Playa knew of [the Decree's effect on the Tulum Properties] that might cause loss or damage for which Stewart Mexico may be obligated under the Owner policies with the intent to prevent prompt verification of the circumstances of the claim?
>
> * * *
>
> Do you find that, in response to Stewart Mexico's request for information related to [the Decree], K.R. Playa concealed or made a false declaration of fact with the intent to cause Stewart Mexico to make an error that may exclude or reduce its obligations under the Owner Policies?

Our determination that sufficient evidence supports the jury's finding that K.R. Playa knowingly purchased these ten properties subject to the Decree, coupled with our discussion *infra* regarding the jury's zero damages findings as to those properties the jury determined K.R. Playa did not purchase subject to the Decree, fully supports the trial court's take nothing judgment in favor of the Stewart Companies. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). Accordingly, we overrule K.R. Playa's first and second issues as moot.

13

## C.     The Jury's Award of Zero Damages

In issue three, Citigroup asserts that, as to the six of the Tulum Properties the jury found that K.R. Playa did *not* know about the Decree and assume or agree to its effect as of the date of purchase, the jury's findings of zero damages lacks sufficient evidentiary support.  Citigroup challenges only the factual sufficiency of the evidence to support the jury's damages findings.  As noted above, when evaluating the factual sufficiency of the evidence, we consider all the evidence and will set aside the finding only if the evidence supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust.  *Mar. Overseas Corp.*, 971 S.W.2d at 406–07; *Cain*, 709 S.W.2d at 176.

Citigroup asserts that the jury's verdict on damages represents a "significant departure" from the range of evidence presented at trial and thus cannot stand, citing *Lieber v. Tex. Mun. Power Agency*, 667 S.W.2d 206, 209 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.), *disapproved of on other grounds by Callejo v. Brazos Elec. Power Coop., Inc.*, 755 S.W.23 73, 75 (Tex. 1988).  *Lieber*, however, involved a condemnation action in which the primary issue was the depreciated market value of property.  *Id.*

Here, however, the jury was asked to determine damages by selecting the lesser of (a) the amount for which the properties were insured or (b) the difference between the *value* of the insured estate or right *as insured* and the *value* of the insured estate or right *subject to the Decree*.  The jury clearly determined that option (b) resulted in the lesser amount and made its findings based on that calculation.  Thus, we must determine if there is factually sufficient evidence to support the jury's findings.  And Citigroup bore the burden of proof on this issue for its question.

14

Importantly, this question did not ask the jury to consider the amount that K.R. Playa paid for the properties, the market value of the properties, or the value that K.R. Playa or Citigroup believed these properties to be worth. Rather, it simply asked the jury to consider the value of the insured properties *as insured*. And, as noted above, the jury was instructed that the April 23, 1981 Decree was valid and enforceable and that the Mexican Federal Government "took or acquired" each of these lots through this Decree.[13] Under the language of the charge, *as insured*, the properties were already "taken or acquired" by the valid and enforceable Decree. K.R. Playa's knowledge or lack thereof regarding the Decree or its effect was simply not something that the jury was asked to consider in answering the damages question.[14] Thus, the jury, based on the charge given and the court's instructions,[15] could have determined that the value of the properties as insured was identical to the value of the properties subject to the Decree because, the properties *as insured*, were already subject to the Decree.

---

[13] The jurors took oaths to render their verdict according to the law as it was given to them in the charge. *See* Tex. R. Civ. P. 236. The charge instructed the jurors that if they failed to follow the instructions, they would be guilty of juror misconduct. The jury is presumed to have followed the court's instructions. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 861–62 (Tex. 2009).

[14] Although K.R. Playa adopted Citigroup's brief, Citigroup confined its argument on damages to its own damages question. As noted above, the jury found zero damages for only six of the ten properties as to Citigroup, but as to K.R. Playa, the jury found zero damages for all sixteen properties. Thus, K.R. Playa has waived any issues relating to the jury's zero damages findings, except to the extent that it is relevant to any of the issues that K.R. Playa properly preserved and addressed in its own briefing. *See* Tex. R. App. P. 33.1(a), 38.1(i). However, we note that, for the same reason that factually sufficient evidence supports the jury's finding of zero damages in response to the question regarding Citigroup's damages, factually sufficient evidence likewise supports the jury's finding of zero damages in response to the similar question posed to the jury regarding K.R. Playa's damages.

[15] *See, e.g.*, *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (holding that appellate court should review sufficiency of evidence based on charge given); *Hirschfield Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (reviewing sufficiency of evidence based on unobjected-to jury instruction).

15

Accordingly, after considering all the evidence, the jury's finding of zero damages is not so weak or so against the overwhelming weight of the evidence that it is clearly wrong and unjust.[16]  *Mar. Overseas Corp.*, 971 S.W.2d at 406–07; *Cain*, 709 S.W.2d at 176.  We overrule Citigroup's third issue.

## EXPERT TESTIMONY

In Citigroup's first issue, it argues that the trial court erred in admitting the testimony of the Stewart Companies' expert Bruce Greenberg because his testimony was unreliable and caused harmful error.  A decision to admit or exclude evidence rests within the sound discretion of the trial court.  *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam).  A trial court abuses its discretion when it acts without regard for guiding rules or principles.  *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012).  But even if the trial court abuses its discretion in admitting certain evidence, we only reverse if the error was harmful—in other words, if it probably resulted in an improper judgment.  *Id.*

---

[16] Further, the jury's zero damages award could be regarded as a simple failure of K.R. Playa's proof on this issue.  *Accord Kormanik v.Seghers*, 362 S.W.3d 679, 689–90 (Tex. App.—Houston [14th Dist.] 2011, pet denied) (explaining that a jury's award of zero damages award may, in some contexts, result from a failure of proof under the measure of damages submitted by the trial court).  Although there was expert testimony in this case, the two experts provided widely disparate testimony regarding the hypothetical market value of the subject properties if the Decree were not in effect.  For example, Randall Bell, Kor/K.R. Playa's expert, testified that the hypothetical market value of Tulum lots 10, 11, and 17, if they were not subject to the Decree, would be approximately $7.1 million, $6.8 million, and $1.6 million.  Bruce Greenberg, the Stewart Companies' expert, testified that the hypothetical market value of these same properties would be approximately $3.2 million, $1.8 million and $246,000 if they were not subject to the Decree.  Finally, Adam Miller with Starwood Ceruzzi, testified that he worked with Kor on the Tulum acquisitions.  He stated that he did not recall how Kor determined the value of the Tulum Properties before making offers and that he could not recall being presented with any appraisals for any of the Tulum Properties or having any discussions regarding the value of the properties before Kor/K.R. Playa purchased them.  Based on this evidence, the jury may have determined that K.R. Playa failed to establish, by a preponderance of the evidence, any value for these properties.  *See id.*

Here, as discussed above, the evidence is sufficient to support the jury's findings that K.R. Playa knew about the Decree and purchased the ten Tulum Properties subject to it. The evidence is further sufficient to support the jury's zero damages findings regarding the six Tulum Properties that K.R. Playa purchased with no knowledge of the Decree. None of these findings turn on Greenberg's testimony. Accordingly, even if the trial court abused its discretion in admitting Greenberg's testimony—a question we need not determine—we cannot say that his testimony probably resulted in an improper judgment. *See id.*; Tex. R. App. P. 44.1.

Indeed, Citigroup acknowledges in its briefing that the jury's zero damages findings were not supported by Greenberg's testimony because Greenberg valued its damages at nearly $4 million for the six lots at issue. Thus, Citigroup essentially concedes that the jury ignored Greenberg's testimony on the basis for which it was proffered—calculating damages. *See Bayer Corp. v. DX Terminals Ltd.*, 214 S.W.3d 586, 609 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("Because the jury's damages award is supported by a calculation and related evidence not specifically relied upon by DX's expert, it cannot be shown that the ensuing judgment turned on the expert's testimony."). Accordingly, we overrule Citigroup's first issue.

CITIGROUP'S STATE LAW CLAIMS

In Citigroup's fourth issue, it asserts that its "Texas law claims should be restored." As noted above, Citigroup brought claims against Stewart U.S. based on Stewart U.S.'s alleged bad faith and Texas Insurance Code violations. Citigroup claims that the "district court barred Citigroup from urging these claims by holding that Mexican law governed instead of Texas law." In support of this issue,

Citigroup directs us to a trial court order denying its motion for the application of Texas law to its claims against Stewart U.S.[17]

---

[17] This order, signed on February 8, 2011, states:

After considering Citi's Motion for the Application of Texas Law to Citi's Claims Against Stewart Title Guaranty Co. as well as Stewart Title Guaranty Co. and Stewart Title Guaranty de Mexico's motions for summary judgment, the pleadings, the response, the affidavits, and other evidence on file, the Court DENIES Citi's Motion for the Application of Texas Law to Citi's Claims Against Stewart Title Guaranty Co.

Citigroup further directs us to this colloquy in the Reporter's Record between its trial counsel and the court:

MR. BILLECK: Your Honor, one thing -- I just want to make sure the record is clear. And I know we're doing this in very summary fashion; but when we talk about ruled in Stewarts' favor with respect to the insurance code claim, the bad faith claim --

THE COURT: Well, I ruled that Texas law did not apply and Mexican law applies, and there is no such cause of action under Mexican law.

MR. BILLECK: That's right. *There's no summary judgment as a matter of the failure to prove the element. It's only you find Mexican law applies, so you do not believe those claims belong in this case.* If it's later determined Texas law applies, we're not prevented from saying there was no ruling on the merits. We now get to prove our damages and recover under those.

THE COURT: I did not go through the analysis under Texas law of the validity of your bad faith claims because I determined that Texas law did not apply, Mexican law applies. So because of that there is no such cause of action under Mexican law; and so, therefore, that will not be a part of this case.

MR. BILLECK: Understood.

THE COURT: I think probably the proper way for me to say it on the record is if another court disagrees with me, you have not waived your argument with regard to those causes of action from an evidentiary standpoint. My ruling was based on a finding that Texas law did not apply.

(emphasis added).

After oral argument of this appeal, Citigroup filed a letter brief directing us to a reporter's record reference where the trial court stated, "However, whether the company did a good or a bad investigation is not an issue in this case because I granted the Stewarts' summary judgment on those points." But Citigroup has not directed us to, nor have we found, any ruling by the trial court other than these recollections of alleged previous rulings definitively stating that, as to *Citigroup's state-law claims against Stewart U.S.*, Mexican law applies.

18

Citigroup is correct that choice of law is decided as a matter of law and reviewed by this court de novo. *See Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). However, Citigroup failed to preserve this issue by obtaining any adjudication of these claims. Although the trial court denied its motion for the application of Texas law, Citigroup has not directed us to any order denying, dismissing, or otherwise adjudicating its bad faith and unfair settlement claims against Stewart U.S.[18] These claims were thus still at issue at the time of trial, and Citigroup should have formally sought submission of them to the jury. Its failure to do so resulted in waiver of those claims. *See* Tex. R. Civ. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."); *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 565 (Tex. 2002) (explaining that a party waives an entire theory of recovery or defense by not objecting to its omission from the charge, pursuant to Rule 279).

Because the record does not reflect that the trial court expressly ruled on these claims and Citigroup failed to submit these claims to the jury, this issue presents nothing for our review. Accordingly, it is overruled.

## VIOLATIONS OF LIMINE ORDER

In K.R. Playa's third issue, it asserts that it is entitled to a new trial because "Stewart[ Mexico]'s numerous violations of orders on motions in limine deceived the jury into believing that K.R. Playa owned the properties, a misconception that poisoned the entire verdict." But a motion in limine does not preserve any issue

---

[18] In its briefing, Citigroup relies on *Sonat Exploration Co.*, a summary-judgment case from the Supreme Court of Texas, and suggests that we should construe all fact questions against Stewart U.S. *See Sonat Exploration Co.*, 271 S.W.3d at 231 ("As the trial court made its decision here by summary judgment, we construe all fact questions against the movant . . . ."). Thus it appears that Citigroup was under the mistaken impression that a summary-judgment motion had been granted adjudicating its state-law claims against Stewart U.S.

for appellate review. To preserve error as to an improper question asked in contravention of a sustained motion in limine, a timely objection is necessary. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 637 (Tex. 1986); *see* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1). Otherwise, a trial court is denied the opportunity to make a curative instruction or mistrial ruling. *Pool*, 715 S.W.2d at 637. Where a trial court's order on a motion in limine is violated, we review the violations to see if they are curable by instructions to the jury to disregard them. *E.g.*, *Dove v. Dir., State Emps. Workers' Comp. Div.*, 857 S.W.2d 577, 580 (Tex. App.— Houston [1st Dist.] 1993, writ denied) (providing that prejudicial questions by appellee, which violated order on motion in limine, to which motions for mistrial were requested by appellant and denied by trial court, probably caused the rendition of an improper judgment). We will only reverse if these violations probably caused the rendition of an improper judgment. *Cf. id.*; *see also* Tex. R. App. P. 44.1(a).

First, we note that K.R. Playa has failed to identify any specific order on a motion in limine signed by the trial court. Rather, it directs us to an *unsigned* order in the clerk's record. However, prior to opening argument, the parties were cautioned by the trial court to refrain from putting any evidence before the jury that Citigroup could foreclose on the Tulum Properties. The trial court further stated that, should any party suggest

> directly or indirectly, by questioning or testimony or other evidence, that this expropriation decree is not valid, that these properties are not included within that expropriation decree and that, actually, therefore, there is no loss of title that's the basis of this lawsuit, meaning the basis of the insurance claim,

then the court would provide "some sort of instruction" to the jury. The trial court further agreed that that the Stewart Companies should refrain from suggesting that

K.R. Playa could convey title to the Tulum Properties. The court noted that the title companies could present evidence of how the properties were "otherwise marketable" because of (a) a provision in the title insurance policies concerning such marketability, (b) certain "hope contracts" that are apparently specific to property acquisitions in Mexico, and (c) the issue of property valuation with the encumbrance, *i.e.*, the value of the Tulum Properties notwithstanding the effect of the Decree. The trial judge clarified, however, that there should not be any suggestion that Citigroup or K.R. Playa could validly sell the property with good title.

K.R. Playa identifies numerous alleged violations of the trial court's instructions. K.R. Playa or Citigroup objected to several of these violations and the trial court instructed counsel for the Stewart Companies outside the presence of the jury to refrain from making reference to certain matters. Additionally, because of the Stewart Companies' violations of the trial court's orders, the trial court twice verbally instructed the jury that the Decree was "valid and enforceable." Finally, in the jury charge, the trial court instructed the jury "that the April 23, 1981 Expropriation Decree is a valid and enforceable decree." The Decree was defined in the charge as "the April 23, 1981 Expropriation Decree by which the Mexican Federal Government took or acquired the 16 Tulum lots."

Several other alleged violations of the limine order identified by K.R. Playa, however, were unobjected-to or objected-to well after the alleged violation occurred. Further, many of the alleged violations identified in K.R. Playa's briefing on this issue resulted in an unspecified objection by either Citigroup or K.R. Playa, followed by a discussion off the record, with the trial court then sustaining the unspecified objection. Finally, K.R. Playa identifies several unobjected-to alleged violations of the court's orders that occurred during Stewart

Mexico's closing argument. None of these alleged violations preserved any error for our review, either because no objection was made or we cannot determine from the record the nature of the objection and ruling. *See Pool*, 715 S.W.2d at 637; Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1).

Moreover, K.R. Playa does not identify anywhere in the record that either it or Citigroup sought a mistrial for the Stewart Companies' alleged violations of the court's orders. *See, e.g.*, *Dove*, 857 S.W.2d at 580 (motion for mistrial made after limine order violated and denied by trial court); *Kendrix v. S. Pac. Transp. Co.*, 907 S.W.2d 111, 114 (Tex. App.—Beaumont 1995, writ denied) (same). In fact, in at least one instance on the record, Citigroup's counsel specifically stated that it did not want a mistrial.[19]

Here, as noted above, the trial court provided two verbal instructions during trial that the Decree was valid and enforceable. It further instructed the jury in its charge to that effect as well as providing a definition in the charge that the Mexican Federal Government "took or acquired the 16 Tulum lots" through the Decree. As noted above, we presume that the jury followed the trial court's instructions. *Columbia Rio Grande Healthcare, L.P.*, 284 S.W.3d at 861–62. Under these circumstances, K.R. Playa has failed to establish that any properly preserved violations of the trial court's orders probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). Accordingly, we overrule K. R. Playa's third issue.

---

[19] Rather, in support of its argument that the Stewart companies' "repeatedly" violated the trial court's "orders on motions in limine," K.R. Playa focuses on the jury's findings that it assumed or agreed to the Decree and the jury's award of zero damages to it. But we have already determined that both of these findings are supported by sufficient evidence.

## CONCLUSION

In summary, we have determined that there is legally sufficient evidence to support the jury's finding that, at the time K.R. Playa purchased ten of the sixteen Tulum Properties at issue, it knew and assumed or agreed to the effects of the Decree. For the remaining six properties, there is sufficient evidence to support the jury's finding of zero damages as to each of them. We have further concluded that the admission of Bruce Greenberg's testimony, if erroneous, probably did not cause the rendition of an improper judgment and that Citigroup failed to preserve its complaints regarding its state-law claims. Finally, K.R. Playa has not established that any of the properly preserved violations of the trial court's orders probably caused the rendition of an improper judgment. Our disposition of these issues supports the trial court's take-nothing judgment in favor of the Stewart Companies.

Accordingly, we overrule all four of Citigroup's issues and all three of K.R. Playa's issues. *See* Tex. R. App. P. 47.1. The judgment of the trial court is affirmed.

/s/    Sharon McCally
Justice

Panel consists of Justices Brown, Jamison, and McCally.

23