# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 17, 2024

Lyle W. Cayce
Clerk

No. 23-30194

Ryan Haygood; Haygood Dental Care, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Camp Morrison; C. Barry Ogden; Karen Moorhead; Dana Glorioso,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:13-CV-335

## ON PETITION FOR REHEARING EN BANC

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.

Per Curiam:

Treating the petition for rehearing en banc as a petition for panel rehearing (5th Cir. R. 35 I.O.P.), the petition for panel rehearing is DENIED. Because no member of the panel or judge in regular active service requested that the court be polled on rehearing en banc (Fed. R. App. P. 35 and 5th Cir. R. 35), the petition for rehearing en banc is DENIED.

The opinion issued August 15, 2024, 2024 U.S. LEXIS 20684, is WITHDRAWN, and the following is SUBSTITUTED:

\* \* \* \* \*

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

This appeal arises from an investigation by the Louisiana State Board of Dentistry ("the Board") into Ryan Haygood, a dentist who practiced in the Shreveport/Bossier City area. Haygood opened a new practice that successfully recruited patients from other established dentists. Upset, those established dentists allegedly conspired to drive Haygood from the market by using their influence with, and positions on, the Board to revoke Haygood's dental license. Beginning in late 2006, the Board launched an investigation of Haygood that led to the revocation of his license in 2010.

A sprawling legal quagmire unfolded over the next several years, but only small bits are relevant to this appeal. Specifically, in 2012, a Louisiana appellate court vacated the Board's revocation after holding that the Board had deprived Haygood of due process by allowing a Board attorney to serve both prosecutorial and adjudicative roles. Haygood then entered a consent decree with the Board that allowed him to keep his license.

While that appeal was pending, Haygood filed a civil action in state court against numerous individuals involved in, and affiliated with, the investigation. The state court civil action alleged violations of Haygood's due process rights and averred that the competing dentists, the Board members, and Board employees had engaged in unfair competition by using the Board's investigative powers to drive him from the marketplace. In February 2013, about two years after filing the state complaint, and after the disposition of the state appeal, Haygood sued in federal court claiming, *inter alia*, injuries under 42 U.S.C. § 1983 and the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401 *et seq.* The federal complaint and state complaint contained nearly identical factual allegations.

No. 23-30194

The district court dismissed the federal complaint for failure to state claims under § 1983 and the LUTPA.  The district court also found that both claims were frivolous and awarded attorney's fees to the defendants.  Haygood appealed the fee award only, averring that the district court erred in awarding fees and, alternatively, was erroneous in its fee calculation.

The district court did not err in awarding fees for a frivolous § 1983 claim, but it made a mistaken calculation of the amount.  Therefore, we affirm the decision to award fees but remit the award to $98,666.50.

## I.

Haygood contended that the competing dentists helped fabricate complaints to the Board concerning his treatment of periodontal issues, so the Board launched an investigation into Haygood's practice based on those complaints.  Numerous instances of alleged impropriety followed.  Relevant here, H.O. Blackwood—a competitor of Haygood's and a director of the Board—communicated with C. Barry Ogden, the executive director of the Board, and Camp Morrison, an investigator with the Board.  Blackwood, Ogden, and Morrison allegedly took steps to tilt Board proceedings in a way that would ensure Haygood's loss of license.

For example, Ogden appointed Brian Begue as independent counsel for the Board during Haygood's hearings. The independent counsel is supposed to provide neutral advice and recommendations to Board members (who are mostly medical professionals) and may not "participate[] in the investigation or prosecution of the case."  Yet "Begue repeatedly disregarded this role and interjected himself into the hearing" by "cross examining witnesses, providing supportive information to complaint counsel, providing and suggesting objections to complaint counsel and openly questioning the testimony of Dr. Haygood."

Ogden and Morrison also designated Robert Dies as an expert to tes-

tify against Haygood despite knowing that Dies was a direct competitor of Haygood's and that the relationship between the two was "antagonistic." Dies lacked experience in periodontal dentistry. Though the Board ended up appointing a new expert, it still used Dies's testimony in the proceeding.

Finally, Morrison engaged Karen Moorhead and Dana Glorioso as investigators to pose as fake patients to gather incriminating evidence against Haygood. But Moorhead and Glorioso were neither law enforcement officers nor licensed private investigators—they were dental assistants who worked for former and current Board members. Thus, they may have violated Louisiana law by posing as patients in Morrison's investigation.[1]

The Board "found Dr. Haygood guilty of eight specifications under two separate charges, ordered permanent revocation of his dentistry license, and assessed the maximum monetary fine allowed by law[,] $40,000, awarding all costs at $133,074.02, for a total of $173,074.02." *Haygood v. La. State Bd. of Dentistry*, 101 So. 3d 90, 93 (La. Ct. App. 2012). Haygood appealed to the state trial court, which largely affirmed the substantive findings but remanded for reconsideration of the sanctions. *Id.* at 94. The Board reduced the monetary penalty by $5,000, but maintained the license revocation, and the trial court affirmed. *Id.*

The state appellate court, however, "reverse[d] the trial court's judgment which affirmed the revocation of Dr. Haygood's license and remand[ed] th[e] matter to the Board for a new hearing." *Id.* at 92. The appellate court reasoned that "the combination of the Board's general counsel's [Begue's] roles of prosecutor and adjudicator violated Dr. Haygood's [fed-

---

[1] *See* LA. REV. STAT. ANN. § 37:3520(A): "It shall be unlawful for any person knowingly to commit any of the following acts . . . [p]rovide contract or private investigator service without possessing a valid license [or] [e]mploy an individual to perform the duties of a private investigator who is not the holder of a valid registration card."

eral and state] due process rights." *Id.* at 92, 96–97. The Louisiana Supreme Court denied the Board's petition for review,[2] and the Board and Haygood eventually entered a consent decree, in 2016, resolving the dispute and allowing Haygood to keep his license.

Haygood filed two lawsuits against Morrison, Ogden, Moorhead, and Glorioso during the pendency of those proceedings. The first was filed on September 26, 2011, in state district court ("the state complaint"). The second was filed on February 13, 2013, in federal district court ("the federal complaint"). The state complaint alleged violations of the Louisiana Constitution's due process clause and that the defendants engaged in unfair trade practices. The federal complaint alleged, *inter alia*, violations of LUTPA and § 1983. Both complaints contained nearly identical factual allegations, paralleling what we have set out above.

The federal district court dismissed the federal complaint for failure to state a claim. With respect to the LUTPA claim, the court held that Haygood could not plausibly claim that any named defendant had done any act that would enable him or her to gain a competitive advantage over Haygood. With respect to the § 1983 claim, the court held that it had been filed outside the statute of limitations and was therefore prescribed.

Defendants in the federal case then sought attorney's fees under 42 U.S.C. § 1988 and LA. REV. STAT. ANN. § 51:1409(A). The district court found that fees under § 1988 were warranted because "the plaintiffs clearly knew, or should have known," that the § 1983 claim was "clearly time-barred." The court also found that fees under § 51:1409(A) were warranted because "the Haygood Plaintiffs' [*sic*] failed to allege any act by Defendants which would enable them to achieve an unfair competitive

---

[2] 2012-2333 (La. 12/14/12), 104 So. 3d 445.

advantage." The court awarded the defendants "attorneys' fees and costs in the amount of $110,993.62."

Haygood appealed only the fee award and does not challenge the underlying dismissal of his claims. He maintains that the district court erred in holding that (1) his § 1983 claim was so clearly time-barred as to be frivolous; (2) his LUTPA claim was groundless and brought in bad faith or for the purposes of harassment; and (3) $110,993.62 was a reasonable award.

## II.

"We review an award of attorney's fees under § 1988 for abuse of discretion. A district court abuses its discretion if it awards sanctions based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Walker v. City of Bogalusa*, 168 F.3d 237, 239 (5th Cir. 1999) (internal quotation marks and citations omitted).

Section "1988 authorizes a district court to award attorney's fees to a defendant upon a finding that the plaintiff's [§ 1983] action was frivolous, unreasonable, or without foundation." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (internal quotation marks and citations omitted). A claim is frivolous under § 1988 if it is not "colorable" and lacks "arguable merit." *Vaughn v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 204 (5th Cir. 2023) (quoting *Vaughner v. Pulito*, 804 F.2d 873, 878 (5th Cir. 1986)). To make that determination, a district court may consider various "factors," such as, *inter alia*, whether the plaintiff "established a prima facie case" or whether the claims were foreclosed by "squarely controlling precedent." *Id.* at 204–05 (internal citations omitted).

Haygood's § 1983 claim alleged that the defendants "deprived Dr. Haygood of his right to a fair and impartial hearing; presented knowingly false or exaggerated claims; [and] provided evidence obtained through unlawful means . . . ." As discussed above, Haygood's due process rights were likely

violated by at least some of the named defendants during the pendency of the Board's investigation. Assuming *arguendo* that that established a *prima facie* case, the propriety of the § 1988 fee award turns on whether the district court properly found the federal complaint time-barred and whether the time bar outweighed the underlying merits. It did.[3]

"Congress did not provide a statute of limitations for claims brought under 42 U.S.C. § 1983." *Brown v. Pouncy*, 93 F.4th 331, 332 (5th Cir. 2024), *petition for cert. filed* (U.S. June 18, 2024) (No. 23-1332). Instead, "a forum state's general or residual statute of limitations for personal injury claims applies to Section 1983 claims. In Louisiana, that period is one year." *Id.* (citations omitted).[4] "Although courts look to state law for the length of the limitations period, the time at which a § 1983 claim accrues is a question of federal law, conforming in general to common-law tort principles." *McDonough v. Smith*, 588 U.S. 109, 115 (2019) (internal quotation marks and citation omitted). That means, in Louisiana, the limitations period for a § 1983 claim

---

[3] The defendants averred, for the first time at oral argument, that Haygood's notice of appeal was defective because it designated only the order setting the fee amount, not the separate order awarding fees in the first place. But in our circuit, "an appeal from a final judgment sufficiently preserves all prior orders intertwined with the final judgment." *Jordan v. Ector Cnty.*, 516 F.3d 290, 294 (5th Cir. 2008) (internal quotation marks and citation omitted). And "an order awarding attorney's fees or costs is not reviewable on appeal until the award is reduced to a sum certain," meaning an "order [that] does not reduce the sanctions to a sum certain . . . is not an appealable final decision." *S. Travel Club v. Carnival Air Lines*, 986 F.2d 125, 131 (5th Cir. 1993) (per curiam).

Haygood's notice of appeal designated the final decision with respect to the award of fees and costs because it designated the order setting the award amount. *See Davis v. Abbott*, 781 F.3d 207, 213 n.5 (5th Cir. 2015). Thus, the notice of appeal "sufficiently preserve[d]" challenges to the order awarding fees, and we have jurisdiction to review both the award of fees and the fee amount. *See Jordan*, 516 F.3d at 294.

[4] Effective July 1, 2024, Louisiana's statute of limitations for delictual actions, or torts, is two years. *See* TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315). The two-year limitations period applies only to actions arising after July 1, 2024. *Id.*

is one year from when the plaintiff knew or should have known that he "has a complete and present cause of action" under "analogous common-law torts." *Id.* at 115–16 (cleaned up).[5]

The parties dispute the tort to which Haygood's claim is most analogous. Haygood avers that his claims are analogous to malicious prosecution and/or fabrication of evidence.[6] An action under § 1983 analogous to malicious prosecution or fabrication of evidence accrues upon "favorable termination of [the] prosecution." *Id.* at 117. The defendants contend that those torts cannot be analogous because Haygood filed his federal complaint well before the favorable termination of the Board's proceedings.[7]

The defendants are correct. Malicious prosecution requires, as an element of the tort, the favorable termination of proceedings. *See* RESTATEMENT (SECOND) OF TORTS § 658 (AM. LAW INST. 1965). Haygood entered a consent decree that brought the investigation to a close on June 9, 2016. That decree likely represented the favorable termination of the Board's proceedings.[8] The state appellate court's decision vacating the Board's fine and license suspension was not a favorable termination because the court "remand[ed] th[e] matter to the Board for a new hearing." *Hay-*

---

[5] *See also Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987) ("[T]he statute of limitations begins to run from the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." (citations omitted)).

[6] The Supreme Court has treated the common-law torts of malicious prosecution and fabrication of evidence as interchangeable. *See McDonough*, 588 U.S. at 116.

[7] As noted above, the federal complaint was filed on February 13, 2013, and the consent decree was entered June 9, 2016.

[8] *Cf. Thompson v. Clark*, 596 U.S. 36, 39 (2022) ("To demonstrate a favorable termination of a . . . § 1983 [claim] for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction.").

*good*, 101 So. 3d at 98.[9]  That means malicious prosecution and/or fabrication of evidence cannot be the analogous tort.

The defendants do not postulate an analogous tort.  Rather, they insist that any analogous, and otherwise viable, common-law tort claim—arising from the 2006-2010 Board proceedings culminating in the revocation of Haygood's dental license, including the complaints made and the investigation thereof—had accrued on or before September 26, 2011, when he filed his state court action.

The defendants are again correct.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (cleaned up).  Therefore, the one-year limitations began to run on September 26, 2011, and the district court did not err in finding that the February 13, 2013, federal complaint was so clearly time-barred that it lacked arguable merit.

## III.

Having determined that the district court did not err in awarding fees under § 1988, we turn to whether it calculated the fee award properly.  It did not.[10]

---

[9] *See also id.* at 46 ("The technical prerequisite is only that the particular prosecution be disposed of in such a manner that it cannot be revived." (cleaned up)).  Something remanded for further proceedings can, of course, be revived in the sense that the tribunal could reach the same disposition.

[10] The district court also found that fees were warranted under LA. REV. STAT. ANN. § 51:1409(A) because Haygood's LUTPA claim was groundless and brought in bad faith.  But the court focused entirely on the § 1988 award when setting the fee amount, using the associated federal standards exclusively to award $110,261.16 in fees and $732.46 in costs.

Contrary to Haygood's contentions, it was not error for the court to rely entirely on the federal standards in calculating the fee amount.  "A court need not segregate fees where the facts and issues are so closely interwoven" that separation of the work done on each issue is impracticable.  *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 528

"[A]n award of attorney's fees under section 1988 should normally be based on multiplying a reasonable number of hours worked by a reasonable rate of compensation." *Cobb v. Miller*, 818 F.2d 1227, 1231 (5th Cir. 1987). That "lodestar method yields a fee that is presumptively sufficient" to constitute a "reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). The presumptively sufficient fee may then be enhanced if "a fee applicant" produces "specific evidence" of factors not already "subsumed in the lodestar calculation." *Id.* at 553 (internal quotation marks and citations omitted). Overarching all of that is the district court's broad discretion to "determine whether the time expended by [movant's] counsel was reasonable." *Riverside v. Rivera*, 477 U.S. 561, 573 n.6 (1986).

Haygood avers that the district court did not closely scrutinize the time reports submitted by the defendants. The record belies that contention for most of the fees awarded. The defendants' private attorneys requested $103,392.60. The court, however, went line-by-line, multiplying the hours worked by a reasonable hourly rate, and ultimately determined that defendants' private attorneys had miscalculated. Thus, the court awarded

---

(5th Cir. 2001) (citation omitted). That is why, where the "issues [are] difficult to segregate, no reduction of fees is required." *Abell v. Potomac Ins. Co.*, 946 F.2d 1160, 1169 (5th Cir. 1991) (citations omitted).

There was extensive overlap between Haygood's § 1983 claim and his LUTPA claim. Indeed, both were premised on identical factual allegations; the relevant motion practice dealt with both claims. The LUTPA claim was "so closely interwoven" with the § 1983 claim that the district court did not err in using the federal standard exclusively and in failing to differentiate between the time billed on the LUTPA claim and the time billed on the § 1983 claim. *See Mota*, 261 F.3d at 528. That decision, though proper, has the effect of rendering irrelevant the district court's finding that fees were warranted under § 51:1409(A). Because the court based the fee calculation entirely on § 1988, there is no need to assess whether the findings under § 51:1409(A) were correct—the reasonableness of the award turns entirely on whether the court calculated the fee award under § 1988 properly.

$98,666.50.  Given the court's obvious care and attention to the amount billed by the private attorneys, we cannot say it abused its discretion in setting the lodestar at $98,666.50.[11]

The court also awarded $11,594.66 for time billed by the Louisiana Attorney General's office.  But the court did not use the lodestar method because "a change in data tracking procedures" at the Attorney General's Office deprived the court of "the number of hours or hourly rates billed by attorneys at the Louisiana Office of the Attorney General."  Thus, the court was provided with only the "Total Amount Billed" by each state attorney.  The court accepted the word of the state's attorneys and awarded the total amount they said they billed.

Our precedent does not permit the district court to bypass the lodestar in that way.[12]  We have no idea how many hours the state's lawyers attorneys spent; that dooms any fee award on their behalf.

Thus, the district court committed an error of law (and hence abused its discretion) by awarding $11,594.66 in fees without using the lodestar method.  We remit the fee award to $98,666.50—the amount calculated properly.

For the reasons explained, we AFFIRM the decision to award fees for a frivolous § 1983 claim but REMIT the fee award to $98,666.50.  The award of costs is not affected.

---

[11] The district court did not add any enhancements.  It did award the defendants costs of $732.46, but Haygood does not contest that.

[12] *See Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016) ("The court *must* first calculate the lodestar, which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate . . . ." (emphasis added) (internal quotation marks and citation omitted)).