# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2026

Lyle W. Cayce
Clerk

————————

No. 25-20059

————————

Anadarko Petroleum Corporation,

*Plaintiff—Appellee*,

*versus*

Alternative Environmental Solutions, Incorporated,

*Defendant—Appellant*.

————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:24-CV-1027

————————————————————

Before Clement, Graves, and Ho, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

Alternative Environmental Solutions, Inc. ("AESI") sued Anadarko Petroleum Corporation in Louisiana state court alleging that Anadarko is vicariously liable for its employee's participation in a scheme involving AESI's then-President to defraud Anadarko by overbilling for environmental remediation work done by AESI. Subsequently, Anadarko filed this action in the Southern District of Texas seeking declaratory judgment that AESI has a duty to defend and a duty to indemnify Anadarko and damages for breach of contract in the form of attorney's fees it paid

defending itself in the underlying lawsuit. The district court granted both. AESI appeals.

## I. Factual Background

Anadarko and AESI entered into a Master Services Contract ("MSC") in 2008 for environmental remediation services. The MSC contained a choice-of-law and venue provision mandating that it would be governed by General Maritime Law or Texas state law and that any litigation in connection with the MSC would take place in Harris County, Texas. AESI also agreed "to be responsible for and assume all liability for and . . . defend, release, indemnify and hold harmless [Anadarko] from and against Claims arising in connection with [AESI's] violation of Applicable Laws." At the time, AESI was owned by Stanley Palowsky and W. Brandon Cork.

In 2012, Palowsky discovered that Cork and several AESI subcontractors had fraudulently overbilled Anadarko by submitting inflated invoices and splitting the money among themselves. Anadarko terminated the MSC after Palowsky learned of the scheme and notified it. Before the termination, AESI had performed work for Anadarko in Wyoming and Louisiana.

Palowsky sued Cork in Louisiana state court. They settled and Cork relinquished his ownership stake in AESI to Palowsky. Palowsky then amended that lawsuit to add Anadarko and its employee, Dana Howard, as defendants, alleging that Howard was complicit in Cork's scheme and Anadarko was vicariously liable for her actions.

After several years of litigation in state court, Anadarko filed this lawsuit in the Southern District of Texas, seeking declaratory judgment that AESI must defend and indemnify Anadarko from the claims made in the Palowsky Lawsuit, damages in the form of past and future attorney's fees due to breach of contract, and attorney's fees for the declaratory action. The

No. 25-20059

district court granted summary judgment for Anadarko, concluding that Texas law applied and AESI had a contractual obligation to defend and indemnify Anadarko. Separately, the district court awarded Anadarko a total of $1,031,142.48 in attorney's fees for both this case and the Palowsky Lawsuit.

## II. Summary Judgment

AESI asserts that the district court erred by granting Anadarko's motion for summary judgment and concluding that AESI has a duty to defend and a duty to indemnify Anadarko in the underlying lawsuit.[1]

## A. Standard of Review

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). This court reviews "grants of summary judgment de novo, applying the same standard as the district court." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). We view the record in the light most favorable to, and draw all

_____

[1] AESI initially averred in its Statement of the Issues that the district court also erred by denying AESI's Motion to Dismiss or Stay the lawsuit because the claims were not ripe for adjudication. However, because it did not adequately brief the issue, the argument is forfeited. *See Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 382 n.6 (5th Cir. 2019) (per curiam).

Nevertheless, this case is ripe for adjudication. "An actual case or controversy exists in declaratory actions on an insurer's liability for an underlying state-court action while the action is still pending." *TIG Ins. Co. v. Woodsboro Farmers Coop.*, 117 F.4th 715, 722 (5th Cir. 2024). The duty to defend can be determined when the underlying lawsuit is filed, but the duty to indemnify is dependent on the facts established in the underlying litigation and so can often not be adjudicated until it is complete. *Id.* However, under Texas law, a court "may decide the issue earlier when it is clear that the court's ruling on the duty to defend must also control the duty to indemnify." *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 672 (5th Cir. 2015) (citing *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (per curiam)).

3

inferences in favor of, the non-moving party. *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012). The interpretation and enforcement of a contract are questions of law, not fact, and so are appropriately dealt with at summary judgment. *See Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 821 (5th Cir. 2003); *see also Tekelec, Inc. v. Verint Sys., Inc.*, 708 F.3d 658, 662 (5th Cir. 2013).

### B. The Choice-of-law Provision

AESI first argues that Louisiana, not Texas, law applies to this case, and the indemnity provision is void under the Louisiana Oilfield Anti-Indemnity Act ("LOIA"). *See* **Blue Br. at 27–32.**

Since this case was filed in the Southern District of Texas, we apply Texas choice-of-law rules. *Fina, Inc. v. ARCO*, 200 F.3d 266, 269 (5th Cir. 2000). The MSC unambiguously mandates Texas law applies, so Louisiana law cannot override the MSC unless (1) it has a "more significant relationship with the parties and transaction than Texas does"; (2) it has a "materially greater interest than Texas in applying its law to this set of facts"; and (3) "applying Texas law [would] be contrary to a fundamental policy of" Louisiana. *Cannon Oil & Gas Servs., Inc. v. KLX Energy Servs., L.L.C.*, 20 F.4th 184, 189 (5th Cir. 2021) (citation modified) (applying the Restatement (Second) of Conflict of Laws § 187 (Am. Law. Inst. 1971)).

To determine which state has a more significant relationship, courts consider multiple contacts, including the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 582 (5th Cir. 2015) (citing Restatement (Second) of Conflict of Laws § 188 (Am. Law. Inst. 1971)). "These contacts are weighed not by their number, but by their quality." *Id.* at 582–83 (citation modified).

No. 25-20059

Although neither Texas nor Louisiana has a particularly close relationship to this dispute, Texas has a more significant one.[2] The contract was executed in Texas. The domicile of the parties, one in Texas and one in Louisiana, weighs neutrally. AESI asserts that the place of performance and location of the subject matter weigh in favor of Louisiana because it did work for Anadarko there. While this is true, the fraud at issue related to a project in Wyoming. And meetings regarding this project took place in Wyoming and Texas, not Louisiana. So, on balance, Texas has a more significant relationship to this case. *See, e.g.*, *id.* at 583 (collecting cases).

It is also unclear why Louisiana would have a materially greater interest in this dispute. AESI largely contends that it does because the site of performance was in Louisiana. But again, even though AESI did *some* work for Anadarko in Louisiana, the gravamen of this dispute took place in Wyoming. A relationship between the parties in another state, however significant, does not create a materially greater interest in *this* case. *See, e.g.*, *Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 224 (5th Cir. 2020) (applying a choice-of-law provision when the two possible jurisdictions have an equal interest in the litigation).

But even if AESI can prevail on the first two prongs, it cannot show that applying Texas law would be contrary to the fundamental policy of Louisiana. AESI argues that, because LOIA voids indemnity clauses, applying Texas law (which does not) is contrary to Louisiana's policy. But this is an incorrect reading of LOIA. LOIA bars provisions that "provide for defense or indemnity . . . against loss or *liability for damages arising out of or resulting from death or bodily injury to persons.*" La. Rev. Stat. §

---

[2] Indeed, the Louisiana state court that heard this case noted that Louisiana's "contacts with any interest in this case are very few."

9:2780(B) (emphasis added). "Through LOIA, the Louisiana Legislature declared null and void and against public policy . . . any provision in such agreements which require the defense or indemnification for death or bodily injury to persons caused by the negligence or fault of the indemnitee." *Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 480–81 (5th Cir. 2002).

The MSC's indemnity provision only requires AESI to indemnify Anadarko "from and against Claims arising in connection with [AESI's] violation of Applicable Laws."[3] It says nothing about death or bodily injury. And no death or bodily injury occurred here. So, LOIA would not bar this provision and it follows that applying Texas law is not contrary to a fundamental public policy of Louisiana. *Cf. Cardoni*, 805 F.3d at 585.

In sum, AESI fails to demonstrate that Louisiana law should control over the parties' express agreement to apply Texas law. *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014) (noting that Texas recognizes the party autonomy rule). Louisiana has neither a more significant relationship nor a materially greater interest in this dispute than Texas. And even if it did, applying Texas law is not contrary to a fundamental policy of Louisiana because LOIA would not apply. So, the parties' choice-of-law provision governs, and Texas law applies to this dispute.

### C. Public Policy

AESI next urges us to conclude that the MSC's indemnity provision is void because it is against public policy. Specifically, it alleges that Howard took part in the illegal scheme and so Anadarko is seeking indemnification for

---

[3] The MSC defines "Applicable Laws" as "applicable statutes, regulations, rules, codes, whether governmental or industry, interim administrative orders and/or enforcement actions."

her actions. The indemnity provision, it claims, is therefore void under either Texas or Louisiana law because it is an agreement for an illegal purpose.

This argument fails for two reasons. First, even if someone commits fraud in connection with a contract, that does not make the contract *itself* an agreement for an illegal purpose. *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 483 (Tex. 2016) (noting that a contract must *require* illegality to be void as contrary to public policy). Second, as the district court concluded, Anadarko is seeking indemnity for AESI's violations, not Howard's. These claims are undoubtedly "in connection" with AESI's admitted fraud and so fall within the MSC's indemnity provision, which must be construed as written. *See Liberty Steel Co. v. Guardian Title Co. of Hou.*, 713 S.W.2d 358, 360 (Tex. App.—Dallas 1986, no writ). Even if Howard was also at fault, the terms of the indemnity provision nevertheless cover these claims.

## D. Judicial Estoppel

AESI also asserts that Anadarko should be estopped from enforcing the choice-of-law or indemnity provisions. Since Anadarko litigated in Louisiana state court for several years without raising these arguments, AESI contends, it should not be allowed to raise them now.

Judicial estoppel plainly does not apply. "Judicial estoppel has three elements: (1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013). But AESI has provided no evidence that Anadarko ever asserted that any of the provisions in the MSC did not apply.

Instead, AESI seems to make a waiver or forfeiture argument.[4] But that is not what judicial estoppel is. And any failure to raise the defense and indemnity clause in state court does not bar Anadarko from raising it in federal court since claims asserting the duty to defend and duty to indemnify are separate and independent claims. *Carl Heck Eng'rs, Inc. v. Lafourche Par. Police Jury*, 622 F.2d 133, 136 (5th Cir. 1980) (noting that indemnity actions "can be and often are brought in a separate suit from that filed by the original plaintiff in the main claim"), *abrogated by* 28 U.S.C. § 1441; *see also Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 208 (Tex. 1999) ("[A]n indemnity claim cannot be compulsory in the action whose judgment is the subject of the indemnity suit."), *overruled in part on other grounds by In re J.B. Hunt Trans., Inc.*, 492 S.W.3d 287, 292–93 (Tex. 2016); *e.g.*, *Gulf Crane Servs., Inc. v. Total Safety U.S., Inc.*, 819 F. App'x 230, 232–33 (5th Cir. 2020) (per curiam) (deciding an appeal on a declaratory suit on duty to defend and indemnify claims relating to a state lawsuit).

### E. Punitive and Exemplary Damages

Additionally, AESI contends that the district court wrongly declared that it must indemnify Anadarko for all damages it could incur in the Palowsky Lawsuit because the MSC explicitly exempts punitive and

---

[4] After oral argument, the Louisiana Fifth Circuit Court of Appeal issued an opinion in the Palowsky Lawsuit. *Palowsky v. Cork*, -- So. 3d --, 2025 WL 3902600 (La. Ct. App. 2025). The court determined that Texas law applied to the dispute, but that Anadarko waived enforcement of the MSC's venue provision. *Id.* at *7. AESI filed a Rule 28(j) Letter arguing that this ruling "demonstrate[s] that Anadarko's handling of the Palowsky Lawsuit in Louisiana estops it from pursuing its present suit in Texas" because "Anadarko waived any rights to object to venue."

But a suit enforcing a duty to defend or indemnify is often brought separately from an underlying lawsuit. Moreover, the question of venue is not before us. And the Louisiana court held that *Texas* substantive law applies to this case. Thus, this decision does not change our analysis.

exemplary damages from the indemnity provision. Anadarko argues that the district court only ordered AESI to pay costs relating to Anadarko's defense in the Palowsky Lawsuit and no exemplary or punitive damages have been assessed. While this is true, the district court's final judgment states that "Anadarko is entitled to defense and indemnity from AESI, and shall be held harmless and reimbursed by AESI for any monies that Anadarko may be called upon to pay in settlement or judgment" of the Palowsky Lawsuit.

This broad language seems to include exemplary and punitive damages excluded by the MSC. So, we vacate this portion of the final judgment and remand to the district court to modify the declaratory judgment to explicitly exclude punitive and exemplary damages from AESI's duty to indemnify.

### F. The Notice Provision

Finally, AESI argues that Anadarko failed to comply with the MSC provision requiring Anadarko to "promptly notify [AESI] after receipt of any claim for which it may seek indemnification." But since this suit was by the indemnitor against the indemnitee, reading the contract to require such notice would be futile. *See Offshore Drilling Co. v. Gulf Copper & Mfg. Corp.*, 604 F.3d 221, 228 (5th Cir. 2010) (stating a notice provision "only has to be employed when it is useful to do so" in a suit between the indemnitor and indemnitee); *Duncan v. Woodlawn Mfg., Ltd.*, 479 S.W.3d 886, 897 (Tex. App.— El Paso 2015, no pet.) (citing *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594–95 (Tex. 2008)) ("Texas law does not require the performance of a futile act.").

### III. Attorney's Fees

We next turn to the issue of attorney's fees. The district court awarded Anadarko attorney's fees for both the underlying lawsuit and the instant lawsuit under Rule 54. AESI argues that it was inappropriate to grant

attorney's fees for the underlying lawsuit and that Anadarko presented insufficient evidence to grant them.

## A. Standard of Review

We review legal issues regarding the application of Rule 54 de novo. *See Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998) (per curiam). However, we review "the district court's award of attorney's fees for abuse of discretion and its factual findings for clear error." *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003).

## B. Fees for the Underlying Lawsuit

Claims for attorney's fees "must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). "Texas courts 'have long distinguished attorney's fees from damages.'" *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1037–38 (5th Cir. 2014) (quoting *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013)). Typically, attorney's fees stemming from an underlying lawsuit are recoverable as actual damages. *Am. Home Assur. Co. v. United Space All., LLC*, 378 F.3d 482, 490 (5th Cir. 2004); *see also In re Nalle*, 406 S.W.3d at 175 (concluding that "fees comprising the breach-of-contract damages are" actual damages). This is because, like here, the fees "are appropriately based upon the equitable ground that the claimant was required to defend against litigation as a consequence of the wrongful conduct of the defendant." *United Space All.*, 378 F.3d at 490. Still, the fees awarded must be reasonable. *Lesikar v. Rappeport*, 33 S.W.3d 282, 308 (Tex. App.—Texarakana 2000, pet. denied). Courts in Texas may take judicial notice of reasonableness, but "when a court does not clearly take judicial notice of reasonableness, and the testimony offered as to reasonableness and necessity is that of an interested witness,

even if uncontradicted, such testimony does no more than raise a fact issue to be determined by the jury." *United Space All.*, 378 F.3d at 490–91.

Anadarko asserted a breach of contract suit alleging that AESI breached its duty to defend and sought recovery of attorney's fees it spent on the Palowsky Lawsuit. In *United Space Alliance*, an insurance company breached its duty to defend an insured in a third-party lawsuit. *Id.* at 485. The fees incurred in defending in the underlying lawsuit were considered actual damages for the breach of contract. *See id.* at 490–91. Though Anadarko seeks damages from defending against AESI and not a third party, the same principle holds true. Attorney's fees incurred in a separate lawsuit because of a breach of a duty to defend are actual damages and the district court erred by awarding them under Rule 54.

### C. Fees for the Instant Lawsuit

While the district court could not grant attorney's fees that Anadarko had incurred for the underlying lawsuit under Rule 54, it could award fees for the instant declaratory suit. *Id.* at 491–92 (noting that Texas law provides for attorney's fees for successful breach of contract actions). AESI argues that Anadarko failed to satisfy its burden of proof regarding these fees because time entry records were redacted, it relied on the Declaration of Mike Haysley, the Director of Legal Operations at Anadarko's parent company, and the fees were not segregated.

Turning to the first argument, that it was improper to award fees because the time entries were redacted, Texas law requires "at a minimum, [sufficient] evidence of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required." *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam)

(citation modified). But AESI failed to raise this issue in the district court, so it is forfeited.[5]

AESI also argues that the district court improperly relied upon the Declaration of Mike Haysley, the Director of Legal Operations at Anadarko's parent company. It asserts that Haysley was not qualified to determine the reasonableness of the legal fees awarded. However, Haysley's Declaration did not make an assertion as to reasonableness of the fees, merely that Anadarko paid them and that they were at a similar or lower rate customarily paid by Anadarko. The district court did not rely on Haysley's declaration to determine the reasonableness of the requested fees, so it did not err.

Finally, AESI argues that the district court abused its discretion by failing to segregate fees for actions that were defending Anadarko from punitive and exemplary damages. While the MSC limited AESI's duty to indemnify to exclude exemplary and punitive damages, no such qualification exists in the MSC's duty to defend language.[6] Therefore, there is no need to segregate fees.

## IV. Conclusion

For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED in part and VACATED in part to the extent that it would force AESI to pay exemplary and punitive damages Anadarko incurs in the Palowsky Lawsuit. The district court's grant of attorney's fees for the

---

[5] AESI does not argue that the district court abused its discretion by failing to properly analyze the amount of attorney's fees. The district court did not calculate the lodestar amount or analyze the fee for reasonableness. *See Haygood v. Morrison*, 116 F.4th 439, 447 (5th Cir. 2024). But, since AESI did not raise this issue on appeal, we do not consider it.

[6] The MSC states that "[t]he indemnity obligations contained in this Agreement do not include indemnification for punitive or exemplary damages."

No. 25-20059

instant suit is AFFIRMED. However, the district court's grant of attorney's fees for the Palowsky Lawsuit is VACATED and the case REMANDED for further proceedings consistent with this opinion.